(54 South. 1036.)

No. 18,083.

STATE ex rel. ROUSSEL v. SANDERS, Governor, et al.

ROUSSEL v. SAME.

(April 10, 1911. Rehearing Denied May 8, 1911.)

*(Syllabus by Editorial Staff.)*

PUBLIC LANDS (§ 152*)—SALE—LANDS AVAILABLE.

Act No. 124 of 1902, § 1, as amended by Act No. 185 of 1906, declaring open for entry and sale all other lands of the state, which were formerly the beds of lakes or other bodies of water, and are now or may hereafter become dry in whole or part by recession of the waters, does not authorize the sale of lands from which the waters of a lake have not receded, and upon which they constantly encroach.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 438; Dec. Dig. § 152.*]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Application for mandamus by the State, on the relation of Willis J. Roussel, against J. Y. Sanders, Governor, and another, and petition for injunction by Willis J. Roussel against the same persons; the actions being consolidated. Judgment denying the relief prayed, and relator appeals. Affirmed.

H. N. Atkinson and Lyle Saxon, for appellant. Walter Guion, Atty. Gen., and R. G. Pleasant, for appellees.

PROVOSTY, J. Section 1 of Act No. 124 of 1902, p. 206, as amended by Act No. 185 of 1906, p. 337, provides, as follows:

"That all islands of natural or other formation other than sea marsh islands belonging to the state of Louisiana, as well as other lands of the state not the property of any levee district, which were formerly the beds of lakes or other bodies of water, whether navigable or unnavigable, which are now or may hereafter become dry in whole or in part by reason of the recession therefrom of the waters which formerly covered the same, or otherwise, be and the same are hereby declared to be open to entry and sale for account of the general school fund of the state, as provided by section 7 of Act No. 124 of 1902, and in all cases where several applications may have been made to the register

of the state land office to purchase any such islands or lands of the state above described and which may have been rejected by him, it shall be the duty of the said register of the state land office to sell the same to the person who, or firm, company, or corporation, whether public or private, which may have already first made proper and legal application to purchase the same from the state: Provided, however, that in no case, shall the provisions of this act be held to apply to any lands, whether of natural or artificial formation forming part of any levy system of the state or to apply to the west end revetment levy in the city of New Orleans."

Section 2 of said Act No. 124 of 1902 reads as follows:

"Sec. 2. Be it further enacted, etc., that in order to place said lands on the market for entry and sale, it shall be the duty of the Governor to direct the board of state engineers to make forthwith and from time to time, as may be necessary, surveys of all of said lands and to subdivide the same into townships, sections, quarter sections and other proper subdivisions, that may be necessary for the identification, description, entry and sale of said lands, and to prepare maps and plats of the same and file the same in the office of the register of the state land office as soon as completed."

Seeking to avail himself of these laws, the plaintiff filed his application with the register of the state land office for the purchase of 160 acres of the shore of Lake Pontchartrain, between Bayou St. John on the east and Orleans Canal on the west, within the corporate limits of the city of New Orleans.

This area had never been surveyed, and the Governor refused to order the survey to be made. While the matter was thus in suspense, the Legislature passed Act No. 215 of 1908, p. 319, annulling all applications on file in the state land office, and requiring all state lands to be sold at public auction.

In the present suit, plaintiff prays for a mandamus to the Governor and the register of the state land office to compel the making of a survey of the said 160 acres of land, and the issuance of a title to same in his favor, and prays also for an injunction to prevent the sale of the land to any one else. Incidentally, plaintiff assails the constitutionality of the said act of 1908, as divesting vested rights.

We do not find that the land in question comes under the operation of said Act No. 124 of 1902. That act speaks of lands which were "formerly" the beds of lakes, but which have since become dry by reason of the "recession therefrom of the waters which formerly covered the same." Nothing shows that the lands in question were formerly the bed of Lake Pontchartrain and have become dry by reason of the recession therefrom of the waters that formerly covered the same. On the contrary, the evidence introduced by plaintiff himself shows beyond dispute that, far from receding from the land at that point, the waters of the lake constantly encroach upon the land.

Nor has the plaintiff any better standing upon the other questions involved in the case, but to discuss them could serve no useful purpose.

Judgment affirmed.

SOMMERVILLE, J., takes no part herein.